# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| NICOLE M. RORICK, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:11-CV-00037 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Nicole Rorick appeals to the district court from a final decision of the Commissioner of Social Security denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (Docket # 1.) For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED for additional proceedings in accordance with this Opinion.

## I. PROCEDURAL HISTORY

Rorick applied for DIB and SSI in June 2008, alleging that she became disabled as of June 1, 2004. (Tr. 8, 117-23.) The Commissioner denied her application initially and upon reconsideration, and Rorick requested an administrative hearing. (Tr. 71-81, 84-86.) Administrative Law Judge ("ALJ") John Pope conducted a hearing on April 15, 2010, at which

---

[1] All parties have consented to the Magistrate Judge. (Docket # 15.) *See* 28 U.S.C. § 636(c).

Rorick, who appeared *pro se*; her husband; and a vocational expert ("VE") testified. (Tr. 29-66.)

On July 22, 2010, the ALJ rendered an unfavorable decision to Rorick, concluding that she was not disabled because she could perform a significant number of jobs in the national economy despite the limitations caused by her impairments. (Tr. 8-21.) The Appeals Council denied Rorick's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4.)

Rorick filed a complaint with this Court on January 25, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.) Rorick's sole argument on appeal is that the ALJ failed to incorporate his finding at step three that she had moderate difficulties in maintaining concentration, persistence, or pace into the residual functional capacity ("RFC") and the hypotheticals he posed to the VE, causing the ALJ's step five finding to lack the support of substantial evidence. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 8-15.)

## II. FACTUAL BACKGROUND

*A. Rorick's Personal, Medical, and Vocational Background*

At the time of the ALJ's decision, Rorick was forty years old; had a high school education and a college degree in counseling; and possessed work experience as a case manager, family support worker, and mental health aide technician. (Tr. 35, 117, 154, 246.) She alleges that she became disabled on June 1, 2004, due to diabetes, ulnar neuropathy, pedal edema, fibromyalgia, antiphospholipid syndrome, transient ischemic attacks, endometriosis, obesity, depression, and anxiety. (Opening Br. 2.)

At the hearing, Rorick, who was 5 feet 2 inches tall and weighed 405 pounds at the time,

2

testified that she lives in a two-story home with her husband and daughters, ages seven and five. (Tr. 35.) Her typical day included caring for her children (one of whom has cerebral palsy and is assisted by a home health nurse) and performing household tasks, interspersed with frequent rest periods. (Tr. 43-48.) She stated that she cannot work due to depression, anxiety, and pain from fibromyalgia and arthritis. (Tr. 38.) She also complained of having anger problems and, once or twice a week, panic attacks. (Tr. 48.) She stated that the pain was "[a]ll over" her body and that she experienced side effects from her medication, including memory loss, weight gain, clumsiness, and dizziness. (Tr. 42, 52.) During an eight-hour period, Rorick estimated that she could walk for one hour, stand for one hour and fifteen minutes, and sit for three hours.[2] (Tr. 53-54.)

Because Rorick's argument on appeal concerns only the ALJ's consideration of her concentration difficulties, the Court will focus on the medical evidence pertaining to her mental impairments. In that regard, on July 16, 2008, Wayne Von Bargen, Ph.D., examined Rorick and noted that she had a logical thought process and an appropriate, but at times tearful, affect. (Tr. 996-98.) He opined that other than mild concentration limitations, which he thought might be attributable to her anxiety about medical problems and family responsibilities, she had intact cognitive functioning. (Tr. 997.) He diagnosed her with anxiety disorder NOS and depressive disorder NOS and assigned her a Global Assessment of Functioning ("GAF") score of 60, reflecting moderate psychological symptoms.[3] (Tr. 997-98.)

---

[2] Rorick's husband also testified at the hearing and essentially corroborated her testimony. (Tr. 56-59.)

[3] To elaborate, GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning

That same day, J. Gange, Ph.D., a state agency psychologist, reviewed Rorick's record and found that she had mild limitations in activities of daily living and social functioning, but moderate limitations in concentration, persistence, or pace. (Tr. 1024.) He opined that she "appear[ed] capable of functioning in typical work environments and social settings where extended periods of concentration or remembering/carrying out detailed instructions is not required and where interpersonal contact is routine and superficial." (Tr. 1030.)

On March 6, 2010, Robert Doyal, Ph.D., examined Rorick to determine if she understood what was involved in her upcoming gastric bypass surgery. (Tr. 1162-65.) He observed that she had a sad affect and depressed mood, scoring in the most severe category of the Beck Depression Inventory; she admitted to recent suicidal ideation without intent. (Tr. 1163-64.) However, she had high-average intelligence, good insight and judgment, and normal thought content and flow. (Tr. 1164.) Dr. Doyal diagnosed her with recurrent, severe major depression; generalized anxiety disorder; alcohol dependence in remission; and rule out compulsive over-eating disorder. (Tr. 1164.) He recommended that she not undergo the gastric bypass surgery because, given her current emotional state, she would not likely adhere to the post-surgical regimen. (Tr. 1164.)

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

---

(e.g., few friends, conflicts with peers or co-workers). *Id.*

adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently

5

unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, with respect to steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

On July 22, 2010, the ALJ rendered his decision. (Tr. 8-21.) He found at step one of the five-step analysis that Rorick had not engaged in substantial gainful activity since her alleged onset date. (Tr. 10.) At step two, the ALJ concluded that she had the following severe impairments: diabetes, ulnar neuropathy, pedal edema, fibromyalgia, antiphospholipid syndrome, transient ischemic attacks, endometriosis, obesity, depression, and anxiety. (Tr. 10.) At step three, the ALJ determined that Rorick's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 10.)

Before proceeding to step four, the ALJ determined that Rorick's testimony of debilitating limitations was not credible to the extent it was inconsistent with the following RFC:

---

[4] Before performing steps four and five, the ALJ must determine the claimant's RFC, that is, what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

> [T]he claimant has the residual functional capacity to perform sedentary work . . . except the claimant may only occasionally balance, stoop, kneel, crouch[,] crawl and climb ramps and stairs. She must never be expected to climb ladders, ropes or scaffolds, or work in environments where she has concentrated exposure to wetness and hazards, especially wet slippery surfaces and unprotected heights. The claimant is limited to unskilled work involving only routine, superficial contact with others.

(Tr. 13.) Based on this RFC and the VE's testimony, the ALJ found at step four that Rorick was unable to perform her past relevant work as a case manager, family support worker, and mental health technician. (Tr. 20.) The ALJ concluded at step five, however, that she could perform a significant number of other jobs within the economy, including assembler, hand packer, and inspector. (Tr. 21.) Therefore, Rorick's claims for DIB and SSI were denied. (Tr. 27.)

### C. The ALJ Erred By Failing to Incorporate His Step Three Finding That Rorick Had Moderate Deficits in Maintaining Concentration, Persistence, or Pace Into the RFC and the Hypotheticals He Posed to the VE at Step Five

Rorick argues that the ALJ erred by failing to incorporate his step-three finding that she had moderate deficits in maintaining concentration, persistence, or pace into the RFC and his questioning of the VE at step five. Rorick's argument ultimately has merit and warrants a remand of the Commissioner's final decision.

To explain, in determining the severity of a claimant's mental impairment, the ALJ must address a claimant's degree of functional limitation in four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see, e.g.*, *Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001). The Seventh Circuit Court of Appeals has stated that the ALJ must then "incorporate" these limitations into the hypothetical questions posed to the VE at step five. *Kasarsky v. Barnhart*, 335 F.3d 539, 543-44

(7th Cir. 2003) (holding that the ALJ erred when neither his RFC nor his hypothetical question to the VE "[took] into account" his earlier finding that the claimant had deficiencies in concentration, persistence, or pace); *accord Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Stated more broadly, "to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate *all* relevant limitations from which the claimant suffers." *Kasarsky*, 335 F.3d at 543 (emphasis added); *accord Stewart*, 561 F.3d at 684 ("When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record.").

Here, at step three of his analysis, the ALJ found that Rorick had moderate deficiencies in maintaining concentration, persistence, or pace. (Tr. 12.) Yet, the RFC and the hypothetical question posed by the ALJ to the VE did not expressly incorporate these findings, instead limiting Rorick to "unskilled work involving only routine, superficial contact with others." (Tr. 61.) Moreover, when he posed this hypothetical, the ALJ instructed the VE to "disregard" any information that he may have gathered in the file or through listening to the testimony other than what he gave him in the hypothetical. (Tr. 61.) Of course, even if the ALJ had not given this specific instruction, "where . . . the ALJ poses a series of increasingly restrictive hypotheticals to the VE, . . . we infer that the VE's attention is focused on the hypotheticals and not on the record. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

Nevertheless, the Commissioner argues that this "unskilled work" limitation in the ALJ's hypothetical to the VE adequately accommodates Rorick's mental health deficits. Rorick disagrees; she contends that the ALJ's failure to incorporate her moderate limitations in concentration, persistence, or pace into the hypothetical left the VE with an incomplete picture of

8

her actual limitations.

"[A]n [ALJ] is free to formulate his mental residual functional capacity assessment in terms such as 'able to perform simple, routine, repetitive work' so long as the record adequately supports that conclusion." *Kusilek v. Barnhart*, No. 04-C-310-C, 2005 WL 567816, at *4 (W.D. Wis. Mar. 2, 2005). That is, courts have held that when a medical source of record translates his findings into a particular RFC assessment, the ALJ may reasonably rely on that opinion in formulating a hypothetical question for the VE. *See, e.g.*, *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (concluding that the ALJ's limitation to low-stress, repetitive work adequately incorporated the claimant's moderate mental limitations because the consulting physician had essentially "translated [his] findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work"); *Howard v. Massanari*, 255 F.3d 577, 581-82 (8th Cir. 2001) (concluding that the ALJ adequately captured the claimant's deficiencies in concentration, persistence, or pace in his RFC that limited the claimant to simple, repetitive tasks, in part because the state agency psychologist concluded in his functional capacity assessment that the claimant could sustain sufficient concentration and attention to perform simple, repetitive, and routine activity); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (finding that the ALJ's limitation of plaintiff to work that is "routine and low stress" as recommended by one medical source of record adequately accounted for the fact that plaintiff often suffered from deficiencies in concentration, persistence, or pace).

This, however, is *not* a case where the ALJ relied upon a medical source's translation of Rorick's moderate deficits in concentration, persistence, or pace into a specific RFC finding. Dr. Gange, the state agency psychologist, opined that, despite her moderate deficits in maintaining

9

concentration, persistence, or pace, Rorick "appears capable of functioning in typical work environments . . . *where extended periods of concentration* or remembering/carrying out detailed instructions *is not required* . . . ."[5] (Tr. 1030 (emphasis added).) Thus, Dr. Gange did not specifically translate Rorick's moderate deficits in maintaining concentration, persistence, or pace into an RFC of "unskilled work"; therefore, the ALJ obviously created this limitation of his own accord. The Seventh Circuit, however, has found a hypothetical flawed where it "purported to tell the vocational expert what types of work [the claimant] could perform rather than setting forth [the claimant's] limitations and allowing the expert to conclude on his own what types of work [the claimant] could perform." *Young v. Barnhart*, 362 F.3d 995, 1004 n.4 (7th Cir. 2004); *see also Stewart*, 561 F.3d at 684-85; *Everroad v. Astrue*, No. 4:06-cv-100, 2007 WL 2363375, at *8 (S.D. Ind. Aug. 10, 2007) ("By using conclusory language to describe [the claimant's] limitations, the ALJ did not allow the expert to make a reliable determination about what work the claimant could perform.").

In *O'Connor-Spinner*, 627 F.3d at 620, the Seventh Circuit explained that in most cases, "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." (collecting cases). The Court explained that "[t]he ability to stick with a given task over a sustained period is *not* the same as the ability to learn how to do tasks of a given complexity." *Id*. (emphasis added) (collecting cases); *see* 20 C.F.R. §§ 404.1568(a), 416.968(a) (defining "unskilled work" as "work which needs little or no judgment to do simple

---

[5] Of course, the ALJ ultimately concluded that Rorick's concentration deficits were *more severe* than those articulated by Dr. Von Bargen, who, in any event, never translated his findings into a specific RFC. (Tr. 998.)

duties that can be learned on the job in a short period of time"). Accordingly, it concluded that in most cases, "the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 620-21.

And here, the ALJ's omission does not constitute mere harmless error. *See Skarbek v. Barnhart*, 390 F.3d 500, 5004 (7th Cir. 2004) (concluding that an error is harmless when it "would not affect the outcome of the case"). The VE specifically testified that a hypothetical individual of Rorick's age, education, and experience with the severity of physical and psychological impairments—in particular, memory loss and concentration—that Rorick claims "would not be able to sustain eight hours of work in the day or 40 hours of work per week. And [she] would not be able to stay on task in competitive employment." (Tr. 63-64.)

Therefore, as emphasized *supra*, when an ALJ relies on a VE's testimony, the hypothetical questions based on the claimant's RFC must incorporate *all* of the claimant's limitations that are supported by medical evidence in the record. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Here, the ALJ failed to do so. Consequently, this case will be remanded to the Commissioner so that the ALJ may properly incorporate Rorick's moderate difficulties in maintaining concentration, persistence, or pace, together with the other mental limitations that he articulated at step three, into his analysis at step five. *See Kasarsky*, 335 F.3d at 544.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion. The Clerk is directed to enter a judgment in favor of Rorick and against the Commissioner.

SO ORDERED.

Enter for this 6th day of March, 2012.

S/Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge